IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL A. KERSTETTER,

      Plaintiff,

  v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

No. 6:15-cv-00337-HZ

OPINION & ORDER

Alan Stuart Graf
Alan Stuart Graf P.C.
208 Pine St.
Floyd, VA 24091

  Attorney for Plaintiff

//

//

1 - OPINION & ORDER

Billy J. Williams
United States Attorney, District of Oregon
Janice E. Hébert
Assistant United States Attorney
United States Attorney's Office
1000 S.W. Third Avenue, Ste. 600
Portland, OR 97201

Sarah Elizabeth Moum
Social Security Administration
SSA Office of General Counsel
701 5th Avenue, Suite 2900
Seattle, WA 98104

       Attorneys for Defendant

HERNÁNDEZ, District Judge:

       Plaintiff Rachel Kerstetter brings this action under the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the Commissioner of Social Security's final decision denying her application for supplemental security income ("SSI") under Title XVI of the Act. Because it is based on legally sufficient reasons supported by substantial evidence, the Commissioner's decision is affirmed.

## BACKGROUND

       Kerstetter applied for SSI on December 20, 2011, alleging an onset date of March 25, 2007. Tr. 13.[1] Born in 1980, Kerstetter was 31 years old when she applied for benefits and 33 when the ALJ issued his decision. Tr. 22. The Commissioner denied her application initially, and Kerstetter requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 13. After a hearing in October of 2013, ALJ John Michaelsen found Kerstetter was not disabled. Tr. 13–23.

---

[1] Citations to "Tr." refer to pages of the administrative record transcript, filed here as Docket No. 14.

Kerstetter appealed, but the Appeals Council denied her request for review, making ALJ Michaelsen's decision the Commissioner's final decision that Kerstetter now challenges in this Court. Tr. 1–3.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009). Each step is potentially dispositive. At step one, the presiding ALJ determines whether the claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled; if not, the analysis continues. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the ALJ determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determines whether the impairment meets or equals one of the impairments listed in the SSA regulations and deemed "so severe as to preclude substantial gainful activity." Bowen v. Yuckert, 482 U.S. 137, 141 (1987); 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis moves to step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step four, the ALJ determines whether the claimant, despite any impairments, has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot perform his or her past relevant work, the analysis moves to step five where the ALJ determines whether the claimant is able to do any other work in the national economy considering the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The burden to show disability rests with the claimant at steps one through four, but if the analysis reaches step five, the burden shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f); Tackett v. Apfel, 180 F.3d 1094, 1098–1100 (9th Cir. 1999). If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g).

## ALJ DECISION

At step one, the ALJ found Kerstetter had not engaged in substantial gainful activity since December 20, 2011, her application date. Tr. 15. At step two, the ALJ found Kerstetter had the following severe impairments: "history of back and neck pain secondary to mild degenerative disc disease, post-traumatic stress disorder/anxiety, and depression." Tr. 15. At step three, the ALJ found Kerstetter's impairments or combination of impairments did not meet or equal the severity of any listed impairments. Tr. 16–17. The ALJ next found that Kerstetter had the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) with the following exceptions. The claimant is limited to simple, repetitive, routine tasks with only occasional interaction with supervisors, co-workers, and the general public.

Tr. 17. At step four, the ALJ found that Kerstetter had no past relevant work. Tr. 22. At step five, the ALJ found that, considering Kerstetter's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, including sweeper and warehouse worker. Tr. 22–23. Therefore, the ALJ concluded that Kerstetter was not disabled under the Act. Tr. 23.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the decision. Andrews, 53 F.3d at 1039–40. A reviewing court must consider the entire record as a whole and cannot affirm the Commissioner by simply isolating a specific quantum of supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted).

**DISCUSSION**

Kerstetter challenges the ALJ's decision on two grounds: 1) that the ALJ failed to give sufficient reasons for discounting the opinion of Dr. Judith Eckstein; and 2) that the ALJ improperly discounted the credibility of Kerstetter's testimony about the severity and limiting effects of her symptoms. Pl. Brief at 1–2.

**1. Medical Opinion – Dr. Eckstein**

Kerstetter asserts that the ALJ did not give legally sufficient reasons for discounting the opinion of examining psychologist Dr. Eckstein. Pl. Brief at 5. There are three sources of medical opinion evidence in Social Security cases: treating physicians, examining physicians, and non-examining physicians. Valentine, 574 F.3d at 692 (citing Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)). "As a general rule, more weight should be given to the opinion of a treating

source than to the opinion of doctors who do not treat the claimant." Lester, 81 F.3d at 830. "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id. The ALJ can reject the uncontroverted opinion of a treating or examining physician only for "clear and convincing reasons" supported with substantial evidence in the record. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if a treating or examining doctor's opinion is contradicted by another doctor, the ALJ can reject it only by providing "specific and legitimate reasons" that are supported by substantial evidence. Id.

     Dr. Eckstein performed a consultive psychological examination of Kerstetter in October of 2011. Tr. 268. She diagnosed Kerstetter with post-traumatic stress disorder, severe and recurrent major depression, panic disorder with agoraphobia, and borderline personality disorder. Tr. 275. Dr. Eckstein noted that Kerstetter had three sons, one of whom suffers from cerebral palsy and AD/HD, another with asthma and separation issues, and that parenting "presents a challenge" for her. Tr. 275. Kerstetter reported past sexual abuse as a child and domestic violence from her husband, from whom she had separated. Tr. 275. Dr. Eckstein wrote that "Ms. Ketstetter's issues with depression and anxiety are extreme at times." Tr. 275. "Even though she has suicidal thoughts," the report continues, "she is unlikely to act on them due to her parenting responsibilities." Tr. 275. Dr. Eckstein also found that Kerstetter suffered from "symptoms consistent with PTSD including nightmares, flashbacks, panic attacks, and hypervigilance." Kerstetter also reported memory problems and difficulties relaxing. Tr.275. Dr. Eckstein noted that Kerstetter's test results "indicate[d] that she is functional overall at an average level cognitively. However, her perceptual skills are above average and suggest that she would do well

with more physically oriented tasks that do not demand the ability to retain information." Tr. 275.

Dr. Eckstein also completed a Mental Residual Function Capacity evaluation form for Kerstetter in November of 2011. The form includes twenty different mental abilities and asks the medical provider to rate the patient as "Not Significantly Limited," "Moderately Limited," "Markedly Limited," or indicate if the provider was unable to determine the extent of the patient's limitation in that area. Tr. 276–77. Dr. Eckstein rated Kerstetter as "Not Significantly Limited" in the following seven areas:

- Ability to remember locations and work-like procedures;
- Ability to understand and remember very short and simple instructions;
- Ability to carry out very short and simple instructions;
- Ability to make simple work related decisions;
- Ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes;
- Ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
- Ability to be aware of normal hazards and take appropriate precautions.

Tr. 276–77. Dr. Eckstein rated Kerstetter as "Moderately Limited" in the following nine areas:

- Ability to understand and remember detailed instructions;
- Ability to carry out detailed instructions;
- Ability to maintain attention and concentration for extended periods;
- Ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Ability to sustain an ordinary routine without special supervision;
- Ability to ask simple questions or request assistance;
- Ability to respond appropriately to changes in the work setting;
- Ability to travel in unfamiliar places or use public transportation;
- Ability to set realistic goals or make plans independently of others.

Tr. 276–77. Dr. Eckstein rated Kerstetter as "Markedly Limited" in the following four areas:

7 - OPINION & ORDER

- Ability to work in coordination with or proximity to others without being distracted by them;
- Ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Ability to interact appropriately with the general public;
- Ability to accept instructions and respond appropriately to criticism from supervisors;

Tr. 277.

Two state agency medical consultants reviewed Kerstetter's medical records, including Dr. Eckstein's opinion about her functional limitations. Tr. 78–90, 93–107. Both consultants found that, contrary to Dr. Eckstein's opinion, the medical evidence in the record and Kerstetter's activities suggested she could complete a normal workday and work week. Tr. 85, 104. Accordingly, the ALJ's analysis of Dr. Eckstein's opinion is subject to the lower, "specific and legitimate" standard. Orn, 495 F.3d at 632.

The ALJ summarized Dr. Eckstein's report and gave "little weight" to her opinion "regarding the severity of [Kerstetter's] claimed limitations. Tr. 21. The ALJ reasoned that Kerstetter's "activities of daily living [were] not consistent with" Dr. Eckstein's opinion, and that other records indicated that "treatment was beneficial for [Kerstetter] and improved her functioning level significantly." Tr. 21.

Kerstetter first argues that the ALJ's reasoning about her daily activities was "not specific enough to meet Ninth Circuit standards," Pl. Brief at 11, and the Court agrees. When explaining the reasons for rejecting medical opinion evidence, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctor's, are correct." Nelson v. Colvin, No. 3:14-CV-00914-HZ, 2015 WL 3606386, at *7 (D. Or. June 4, 2015) (quoting Reddick, 157 F.3d at 725). The ALJ did not explain which of Kerstetter's daily activities conflict with Dr. Eckstein's opinion, leaving the Court to comb the

8 - OPINION & ORDER

administrative record to find specific conflicts. The ALJ's conclusory reasoning does not provide anything for the Court to review, and thus the ALJ erred. Huerta v. Colvin, No. 2:15-CV-01114-DWC, 2016 WL 69668, at *6 (W.D. Wash. Jan. 6, 2016) (finding error where the "ALJ failed to sufficiently identify which of Plaintiff's activities of daily living actually conflicted with [her doctor's] opinion, and otherwise failed to explain how Plaintiff's activities actually conflicted with [the doctor's] opined limitations.") (citing Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014)).

However, the ALJ offered a second independent reason for discounting Dr. Eckstein's opinion—that Kerstetter's mental impairments substantially improved with treatment. Tr. 21. The ALJ found that records from Douglas County Mental Health ("DCMH") indicated that treatment had successfully addressed Kerstetter's issues with anxiety and panic attacks. Tr. 21. Her discharge summary noted that she was "graduating out of . . . mental health" and that her prognosis was good." Tr. 401. Her GAF score had increased from 52 at intake to 68 at discharge.[2] The treatment notes from her last session at the facility in June of 2012 also indicated that her condition had substantially improved, as Kerstetter rated her anxiety and depression as a "0" out of 10 (with 10 being the worst). Tr. 403. This is a significant improvement from her reports of anxiety or depression at 7, 8, or 9 near the beginning of her treatment in 2010. Tr. 377–79. The ALJ concluded that Kerstetter's "treatment notes . . . from Douglas County Mental

---

[2] GAF scores are used by clinicians to rate an individual's overall level of functioning and can encompass psychological, social, and occupational abilities. Wright v. Comm'r of Soc. Sec., No. 1:13-CV-02193-ST, 2015 WL 462016, at *8 (D. Or. Feb. 4, 2015). Although the SSA has not adopted the GAF scale as directly correlative of an individual's ability to work, a GAF score provides a "rough estimate of an individual's psychological, social, and occupational functioning[.]" Hall v. Astrue, No. CV 10-512-SI, 2011 WL 4381734, at *16 (D. Or. Sept. 19, 2011) (citation and quotation omitted). A GAF of 52 indicates moderate symptoms and limitations, while a GAF of 68 indicates a person with "some mild symptoms . . . but generally functioning pretty well." Diagnostic and Statistical Manual of Mental Disorders IV 31–34 (4th ed.2000).

9 - OPINION & ORDER

Health demonstrate that treatment was beneficial for [Kersetetter] and improved her functional level significantly." Tr. 21.

It is well-established that impairments that can be controlled effectively with treatment are "not disabling for the purpose of determining eligibility for SSI benefits." <u>Warre v. Comm'r of Soc. Sec. Admin.</u>, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ examined the medical evidence and reasonably concluded that it showed Kerstetter's mental impairments were well-controlled with treatment through counseling. Tr. 21. That is a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Eckstein's opinion and therefore, the Court finds no error in the ALJ's analysis.

Kerstetter argues that a second opinion from Dr. Eckstein, rendered after the ALJ's decision but considered and incorporated into the record by the Appeals Council, undermines the ALJ's reasoning regarding the effectiveness of the treatment Kerstetter received at DCMH. Pl. Brief at 15–17. Kerstetter asserts that Dr. Eckstein's new report is "now elevated to that of a treating physician's report, thus deserving greater weight than that of an examining physician's report," and contends that a remand for additional proceedings is required to allow the ALJ the "opportunity to review the new evidence, the new report[,] and the new opinion of Dr. Eckstein . . . ." Pl. Reply at 2, 6.

Although Kerstetter is correct that a treating physician's opinion is generally given more weight than that of an examining physician, <u>Lester</u>, 81 F.3d at 830–31, the standard for properly rejecting a treating physician's opinion is the same as for the opinion of an examining physician. <u>Andrews</u>, 53 F.3d at 1041 (explaining that when a treating or examining doctor's opinion is contradicted, the ALJ may reject it for specific and legitimate reasons supported by substantial

10 - OPINION & ORDER

evidence.). Dr. Eckstein's post-decision letter does not change the conclusion that the ALJ's analysis of Dr. Eckstein's initial opinion is supported by substantial evidence in the record.

In her opinion from February of 2014, Dr. Eckstein wrote:

> Per Ms. Kerstetter's attorney's request, I will comment on [ALJ] Michaelsen's 11/06/13 Notice of Decision-Unfavorable. On page 8 of his report, he . . . noted that treatment notes from the Douglas County Mental Health Center had addressed her issues with anxiety and panic attacks leading to improvement. Ms. Kerstetter testified that her providers were encouraging her discharge, even though she was not really ready. **It is likely that Ms. Kerstetter was not as forthcoming with providers at the county mental health center, sensing that they wanted to discharge her.** In essence, it appears as if Ms. Kerstetter was not satisfied with the counseling she received and refutes that this significantly improved her level of functionality. She continues to have recent/current situational stressors which cause her symptomatology to remain active. While medical consultant, Dorothy Anderson, Ph.D. found Ms. Kerstetter able to understand work-like procedures and understand and remember short/simple instructions, she acknowledged that Ms. Kerstetter was unable to understand and remember more complex or detailed instructions. However, considering Ms. Kerstetter's anxiety level that is likely to increase under the stress of a working setting, it is expected that her ability to concentrate and perform even simple tasks on a sustained basis would be likely to fail. Thus, I continue to support the opinion that Ms. Kerstetter would have difficulty handling any type of regular employment without further psychological decompensation and overall increase in her psychopathology.

Tr. 524 (emphasis added).

Dr. Eckstein's speculation regarding the circumstances surrounding Kerstetter's discharge from DCMH is not adequate grounds for disturbing the ALJ's decision and remanding this case for further proceedings. For one, Dr. Eckstein's cites no evidence, other than Kerstetter's testimony at the hearing before the ALJ, to support her hypothesis about Kerstetter's discharge. The ALJ considered Kerstetter's testimony on this issue, compared it to the records from DCMH, and concluded that there was nothing in the record to support Kerstetter's claims that "the providers were encouraging her discharge, even though she really was not ready." Tr.

11 - OPINION & ORDER

21. Dr. Eckstein's alternative interpretation of Kerstetter's testimony might be a reasonable one, but that is not sufficient to warrant overturning the ALJ's conclusion that the records from DCMH reflect that Kerstetter's conditions significantly improved with treatment. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citing Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008)).

Second, and relatedly, the absence of new evidence in Dr. Eckstein's second report bearing on the ALJ's conclusion that Kerstetter's conditions improved with treatment means that a remand of this case to the ALJ to consider Dr. Eckstein's second report simply is not necessary. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (explaining that a claimant who seeks remand based on new evidence must show the new evidence bears "directly and substantially on the matter in dispute" and that there is "reasonable possibility that the new evidence would have changed the outcome of the administrative hearing.") (internal quotation marks omitted).

Finally, Kerstetter's reliance on Dr. Eckstein's hypothesis about her treatment at DCMH as grounds for remand presents a troubling choice for the Court. In essence, Kerstetter is asking the Court to find credible her present claim that she actively misrepresented her condition to treatment providers at DCMH, and then rely on those misrepresentations as a legitimate ground for overturning the ALJ's interpretation of her objective medical records. The Court is simply unwilling to endorse such a theory.

//

//

12 - OPINION & ORDER

### 2. Kerstetter's Credibility

Kerstetter next asserts that the ALJ gave insufficient reasons for rejecting her subjective complaints about the intensity, persistence, and limiting effects of her symptoms. Pl. Brief at 17. Although the Court agrees with Kerstetter that the ALJ committed errors in some aspects of his analysis of Kerstetter's credibility, the ALJ's overall credibility evaluation is based on other, legally sufficient reasons supported by substantial evidence. Accordingly, the ALJ's errors are harmless and do not warrant reversal.

An ALJ analyzes the credibility of a claimant's testimony regarding her subjective pain and other symptoms in two steps. Lingenfelter v. Astrue, 504 F.3d 1028, 1035–36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (citation and internal quotation omitted). "The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (citation and internal quotation omitted). Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject her testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. Id. (citation and internal quotation omitted).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen v. Chater, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements by the claimant. Id.

At step one, the ALJ found that Kerstetter's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 18. The ALJ found at step two that Kerstetter's statements about the intensity, persistence, and limiting of effects of her symptoms were not entirely credible. Tr. 19.

First, the ALJ found that Kerstetter's "wide range of activities suggests that her limitations are not as significant as alleged." Tr. 17. The ALJ noted that Kerstetter cared for her three children, including one who suffers from cerebral palsy and required her assistance in caring for himself, walking, and performing exercises. Tr. 17–18. Kerstetter testified that she could perform household chores and could drive a car on occasion. Tr. 18. Her mother visited on occasion to help with the kids and the chores. Tr. 18. The ALJ noted her hobbies, including watching TV, playing games online, hanging out with her children, listening to music, and drawing, and that she went to church on Sundays. Tr. 18.

There is no conflict between the activities described and Kerstetter's claimed limitations. Kerstetter stated that she is "not comfortable with people or places [she] is not familiar with," and that she suffers from unexpected and sudden panic attacks that impact her ability to focus. Tr. 179. She said that she "[doesn't] do well under pressure or high stress situations," and testified to losing her last job due to a stress-related outburst. Tr. 49–50. Kerstetter testified that she "[doesn't] feel safe outside of [her] home," and that she "is extremely uncomfortable going places alone." Tr. 182. She also stated that she neglects her own personal care, and has to be reminded by her mom or a friend to bathe or change her clothes. Tr. 181. She stated that she could physically perform most chores, but that she struggled to complete them because she lacked motivation. Tr. 182. During the hearing she also explained that she has hoarding tendencies and that friends have cleaned her house "behind [her] back" because the mess was

taking over her house. Tr. 53–54. Kerstetter's claimed limitations are entirely consistent with her daily activities, which are essentially limited to caring for her three children, playing on the computer, occasionally visiting with her mother, and attending church. Accordingly, this is not a clear and convincing reason for discounting Kerstetter's credibility.

At the hearing, Kerstetter testified that she had lost jobs in the past due to "outbursts in the workplace." Tr. 47. Kerstetter explained that she began experiencing difficulties on the job completing tasks on time due to her obsessive compulsive disorder. Tr. 47–49. She also experienced difficulties getting along with co-workers and accepting criticism of her work from superiors. Tr. 49–50. As these issues compounded, Kerstetter says, she felt overwhelmed, and "just got really stressed out and I flipped out . . . cursed at them, and walked out the door." Tr. 50. "Given her activities and responsibilities," the ALJ wrote, "anyone would feel overwhelmed." Tr. 18. However, the ALJ wrote that "it is difficult to believe the claimant has uncontrollable outbursts [] that prevent her from working." Tr. 18. The ALJ reasoned that Kerstetter "appear[ed] to lead a very structured, ordered lifestyle," whereby she did chores, prepared meals, and played games with her children. Tr. 18. The ALJ noted that Kerstetter "had been trying to get her sons involved in community recycling, and would watch television with them and read them stories at night." Tr. 18.

Again, the Court fails to see the conflict between Kerstetter's testimony and the evidence the ALJ relied on to discount her credibility. The fact that Kerstetter can maintain a household and care for her children in a structured way does not mean that her anxiety and her obsessive compulsive tendencies could not severely impact her ability to work. Perez v. Astrue, No. CV 09-4600-MLG, 2010 WL 1051128, at *9 (C.D. Cal. Mar. 18, 2010) ("While Plaintiff's OCD may actually help him care for his son in some respects, that same severe impairment could be a

15 - OPINION & ORDER

liability in the work setting."). The ALJ's conclusion that Kerstetter's claims about her outbursts at work are "difficult to believe" is not supported by the evidence in the record and it therefore not a clear and convincing reason for discounting her credibility.

These errors, however, do not necessarily require the Court to disturb the ALJ's conclusion that Kerstetter's claims are not entirely credible. If there is substantial evidence supporting the ALJ's other reasons for discounting a claimant's credibility, an error as to some of the ALJ's given reasons "does not negate the validity of the ALJ's ultimate [credibility] conclusion[.]" Minter v. Comm'r of Soc. Sec., No. 3:11-CV-00113-KI, 2012 WL 1866608, at *3 (D. Or. May 22, 2012) (quoting Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)).

The ALJ gave several other reasons to support his adverse credibility finding. First, the ALJ wrote that "[a] review of [Kerstetter's] work history shows that [she] has a very minimal work history prior to the alleged disability onset date, which raises a question as to whether [her] continuing unemployment is actually due to medical impairments." Tr. 18. A claimant's limited work history that shows little propensity to work is a legitimate reason to discount the credibility of her testimony about her ability to work. Giroux v. Colvin, No. 1:11-CV-03158-SI, 2014 WL 6750319, at *6 (D. Or. Dec. 1, 2014) (citing Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Kerstetter's earnings records show she only worked in four years since 1995, and in two of those years she only earned approximately $1,000. Thus, the ALJ's reasoning on this point is supported by substantial evidence in the record.

The ALJ also relied on inconsistencies between Kerstetter's claims about the severity of her physical limitations and her reported activities to discount her credibility. Kerstetter claimed to suffer from constant back and hip pain that limited her ability to lift, stand, walk, and kneel.

Tr. 184, 200. She wrote that she could not stand for long periods, and could only walk for two or three blocks before needing a five- to ten-minute break before continuing. Tr. 184. The ALJ noted, however, that "some of her pain problems were the result of a fall while was out hiking in August 2012," a few months after she completed her disability application near the end of February. Tr. 20, 186. The ALJ also noted that Kerstetter reported carrying her son. The contradictions between Kerstetter's claimed limitations and her activities is another legitimate reason for discounting her credibility that is supported by substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004) ("To find the claimant not credible the ALJ [may] rely . . . on internal contradictions in that testimony.") (citation omitted).

      The ALJ wrote that, prior to her fall, the treatment for Kerstetter's back pain was conservative, and that medical records subsequent to her fall did not support her allegedly severe physical limitations. Tr. 20. The ALJ provided a detailed summary of the relevant medical records, and noted that her doctors repeatedly found she had good strength, had no problem walking, and that imaging of her neck and back was consistently negative. Tr. 19. Kerstetter's doctors recommended stretching and strengthening exercises to treat her back pain, and prescribed her ibuprofen and Vicodin. Tr. 243, 449–50. These too are legitimate reasons, supported by substantial evidence, for discounting Kerstetter's credibility about the extent of her physical limitations. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Bartlett v. Colvin, No. 1:14-CV-00142-SB, 2015 WL 2412457, at *12 (D. Or. May 21, 2015) (collecting cases regarding "conservative treatment" and credibility).

17 - OPINION & ORDER

Moreover, the ALJ did not entirely reject Kerstetter's claims. Consistent with her allegations about her anxiety and difficulties getting along with co-workers, the ALJ limited Kerstetter to jobs that had only occasional interaction with supervisors, co-workers, and the general public. Tr. 17. Although Kerstetter "reported that she did not socialize very much," the ALJ noted that she planned to have a friend stay at her house while her son recovered from surgery, and that she interacted with her mom and other friends who helped her shop and do chores. Tr. 18. Kerstetter also testified that she regularly attended church, and other evidence in the record showed that she attended a women's camp (which Kerstetter described as "awesome"), took a Zumba class at the local YMCA, and attended a "Wildlife Safari" event with her children. Tr. 183, 318, 407. The ALJ balanced Kerstetter's claims against evidence in the record that contradicted her testimony, and constructed an RFC that accounted for her limitations. See Carmickle, 533 F.3d at 1163 (finding harmless error, in part, because the ALJ's RFC was "largely consistent with [the plaintiff's] testimony).

The ALJ's analysis of Kerstetter's credibility, despite the errors identified above, is specific and supported by substantial evidence. Thus, the Court finds no error. Id. ("[T]he remaining valid reasons supporting the ALJ's determination . . . are specific findings related to [the plaintiff's] ability to perform vocational functions, and they clearly demonstrate that to the extent the ALJ found [the plaintiff's] testimony incredible, the ALJ did not do so arbitrarily.").

//
//
//
//
//

18 - OPINION & ORDER

## CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this 23 day of May, 2016.

*/s/ Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge